### NATIONAL BRASS WORKS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 12295.

United States Court of Appeals
Ninth Circuit.

May 23, 1950.

Todd W. Johnson, Donald C. McGovern and Edward D. Robertson, Los Angeles, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, and I. Henry Kutz, Sp. Assts. to Atty. Gen., for respondent.

Randolph E. Paul, Washington, D. C. (Louis Eisenstein and Louis F. Oberdorfer, Washington, D. C., of counsel), for Pacific Mills, as amicus curiæ.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Petitioner, National Brass Works, Inc., asks us to review a decision of the Tax Court in deficiency redetermination proceedings. The Tax Court found that the Commissioner of Internal Revenue's determination of a deficiency in petitioner's corporate income tax for the year 1944 was correct.

The controversy is over the allowability of a business expense claimed by petitioner under Section 23(a) (1) (A), Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A). Petitioner is engaged in the business of

making and selling non-ferrous castings and had deducted from its 1944 gross income as a business expense an amount paid to the government in compromise of admitted violations of certain maximum price regulations promulgated by the Office of Price Administration which established certain maximum selling prices for non-ferrous foundry products. Respondent disallowed the deduction and assessed the disputed deficiency.

The case was submitted to the Tax Court on stipulated facts. In short, after examination of its books by O.P.A. investigators, petitioner admitted that between February 1, 1943, the effective date of such price regulations, and January 31, 1944, it made sales of castings at prices in excess of the maximum prices so established. And, thereafter, "in settlement of the Administrator's Claim for treble damages on account of violations of ceiling prices for non-ferrous castings" [quoting from the Enforcement Attorney's acknowledgement of receipt], petitioner paid to the government in 1944 the amount claimed and deducted on its 1944 return as a business expense. It was further stipulated that "the allowability [of the deduction] is the only issue involved herein" and that the sales in which the overcharging occurred were to "customers who bought the castings for use or consumption in the course of their trade or

business within the meaning of Section 205(e) of the Emergency Price Control Act of 1942."

Petitioner contends that the amount so paid to the government in settlement of the Price Administrator's cause of action[1] is a deductible business expense. What items may be deducted from gross income for income tax purposes is, of course, a matter of legislative grace and the deduction claimant must bring his case within the statutory authorization. Section 23(a) (1) (A) permits the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

As will be later discussed the Commissioner and the Tax Court have consistently taken the position that payment to the government in the circumstances of this case is not an ordinary and necessary expense. However, one appellate court has ruled in a case somewhat similar to the instant one that in some circumstances a payment of damages to the government in settlement of the Price Administrator's claim is a deductible business expense. See Jerry Rossman Corp. v. Commissioner, 2 Cir., 1949, 175 F.2d 711.[2] Such is the setting, and petitioner-taxpayer urges us to accept as correct the Second Circuit's reasoning.[3] While there are factual differences between

---

1. The buyers whom petitioner overcharged were, as indicated in the text, purchasers for use or consumption in the course of trade or business and therefore had no claim for damages. See § 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925(e). In fact such buyers were themselves violators. See § 4(a) of the Act, 50 U.S.C.A.Appendix, § 904(a). § 205(e), supra, grants the damage remedy only to a buyer "who *other than* in the course of trade or buys * * * for use or consumption business * * *" [Emphasis ours.] The 1942 Act, however, failed to give to the Price Administrator a cause of action for civil damages except where, as here, the person buying was not entitled to bring an action. By amendment of § 205 (e) in 1944, the civil remedy was in addition made available to the Administrator where a buyer who was entitled to sue failed to institute an action within thirty

days from the date of the occurrence of the violation. See 58 Stat. 640.

2. The decision in the cited case was handed down subsequent to the Tax Court's decision herein and reversed one of the authorities cited by the Tax Court in support of non-deductibility here.

3. The Second Circuit, in holding erroneous an order assessing a deficiency, had this to say: "First, we say that on no theory was the payment of the overcharge to the United States the payment of a 'penalty.' Second, we say that, even if it was the payment of a 'penalty', that is not a 'rigid criterion' of its deductibility. Third, we say that there was positive and compelling evidence [the administrative acceptance of the amount of overcharges as sufficient in settlement] that to allow such a deduction would not 'frustrate' the policies of the underlying act." Jerry Rossman Corp. v. Commissioner, 1949, 175 F.2d 711, 714.

that case and the instant one,[4] we feel they are of no consequence to our determination because what we must decide here is whether the Tax Court's legal theory, under which certain inquiries were irrelevant is, or is not correct. If not, the matter must be remanded to the Tax Court for further proceedings.

Rulings promulgated by the Commissioner have held that payments to the government in satisfaction of a claim for damages for price violations are not deductible. See I.T. 3627, 1943 Cum.Bull. 111; I.T. 3799, 1946–1 Cum.Bull. 56.[5] Compare I.T. 3630, 1943 Cum.Bull. 113. On the other hand, payments to "ultimate consumers" to compromise claims for damages under the Price Control Act have been ruled deductible whether or not "single" damages or more were demanded and paid. See I.T. 3627, supra.[6] The Tax Court has consistently disallowed deductions of payments to the government in settlement of O.P.A. violations. See Scioto Provision Co., 1947, 9 T.C. 439; Garibaldi & Cuneo, 1947, 9 T. C. 446; Jerry Rossman Corp., 1948, 10 T.C. 468 reversed, 2 Cir., 1949, 175 F.2d 711; Nazareth Mills, Inc., T.C.Memo. Dec., June 30, 1949. The Commissioner justifies the different result where payment is to a buyer, who is entitled by the Price Control Act to sue, by the touchstone of "remedial" as opposed to "penal". The Tax Court and the Commissioner, on the other hand, have characterized payments to the government as "penalties" and have refused to allow deduction because any mitigation of the "penalty" would be against public policy. See Scioto Provision Co., supra, 9 T.C. 445.

It has been the policy of the Price Administrator to save the innocent price violator from excessive civil liability. The custom to demand of him only the amount of the overcharge, recognizable from a course of conduct at the time these violations occurred, came to be stated in the law. Section 205(e) of the Price Control Act, as amended in 1944, 58 Stat. 640, provides for an affirmative defense to a litigated claim for any more damages than the overcharges, in the following language: "Provided, however, That such amount [of damages] shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull [sic] nor the result of failure to take practicable precautions against the occurrence of the violation."[7] The administrative practice and policy as to settlement in cases in which the purchase is for use or consumption in the course of trade or business are stated in Section 9.1601 of the O.P.A. Manual.

It cannot be doubted but that the instant expenditure was incurred by petitioner "in

4. In the Rossman case the price violator had voluntarily informed O.P.A. officials before any investigation that it had in its sales unwittingly violated certain price regulations. The matter was settled expeditiously by payment to the government of an amount equal to the amount of overcharges. The violator claimed an income tax deduction and the Commissioner and the Tax Court followed the same course as here. In the instant case there was no voluntary admission. The violations were "discovered" only after official investigation. Proceedings to impose civil damages, however, had not been instituted at the time of settlement. Moreover it is not a matter of record whether what petitioner paid to the government amounted to no more than the amount of overcharges.

5. But, compare I.T. 3530, 1942-1 Cum.Bull. 43 [damages for marketing cotton in ex-

cess of farm marketing quotas fixed under the A.A.A. of 1938, ruled deductible]. That damages for excessive marketing under the A.A.A. are "penalties" see Rodgers v. United States, 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3. The A.A.A., however, did not expressly make sales in excess of established quotas unlawful.

6. In accord, I.T. 3762, 1945 Cum.Bull. 95 [double damages under F.L.S.A.].

7. The amendment is applicable by express statutory provision to petitioner's case even though the violations occurred prior to the enactment date thereof. See § 108(c) of the Act of June 30, 1944, 58 Stat. 640, 50 U.S.C.A.Appendix, § 925 note.

   A 1946 amendment of § 205(e) eliminates from the proviso as quoted in the text the following: " * * * or $25, whichever is greater * * *." See Act of July 25, 1946, 60 Stat. 676.

carrying on" [quoting from the tax statute] its business. Compare Kornhauser v. United States, 1928, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. However, it is further required that the expense be "ordinary and necessary", but we are given no help in defining such terms either by the statute or treasury regulations. Compare Kornhauser v. United States, supra; Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Textile Mills Securities Corp. v. Commissioner, 1941, 1933, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249. Other than for the idea that it is a "penalty" or that its deduction for tax purposes would be against public policy, the expenditure seems as "ordinary and necessary" as legal expenses incurred in an unsuccessful attempt to resist a postal fraud order [see Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 or the payment of a judgment for damages for fraud [see Helvering v. Hampton, 9 Cir., 1935, 79 F.2d 358].

This country has experienced no more complicated and involved regulation of business than that invoked as a war measure to combat inflation through price control. The hazards of inadvertent violation became a common business risk to such an extent as to be the subject of congressional debate and remedy. "The daedalian mazes of the regulations" [quoting from Jerry Rossman Corp. v. Commissioner, supra, 175 F.2d 714] proved too much for many persons. See also Samuel v. United States, 9 Cir., 1948, 169 F.2d 787, 791.

But respondent insists that the civil liability to the government for price violations, as provided for in Section 205(e) of the Price Control Act, was imposed as a "penalty" and hence by reason of an asserted rule that statutory penalties are not deductible from gross income, payments in satisfaction of such liability are not deductible.[8] Compare, e. g., Commissioner of Internal Revenue v. Longhorn Portland Cement Co., 5 Cir., 1945, 148 F.2d 276, certiorari denied, 1945, 326 U.S. 728, 66 S.Ct. 33, 90 L.Ed. 432; Davenshire, Inc., 1949, 12 T.C. 958, 961. Petitioner argues that such liability was not intended to be a "penalty", at any rate to the extent the amount paid represents overcharges.

While it would perhaps be convenient to attach a tag or label to civil liability for price violations, to do so by the use of the term "penalty" confuses more than it simplifies. What is considered a penalty differs with circumstances and viewpoints.[9]

---

**8.** Compare Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, at page 473, 64 S.Ct. 249, 253, 88 L.Ed. 171; "Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment."

**9.** In the following situations federal courts have seen fit to characterize the provisions of § 205(e) either as "penal" or as "remedial":

(1) As to whether a claim for damages under § 205(e) survives the death of the violator, see Sullivan v. Associated Billposters and Distributors, 2 Cir., 1925, 6 F. 2d 1000, 42 A.L.R. 503; Bowles v. Farmers Nat. Bank, 6 Cir., 1945, 147 F.2d 425; Porter v. Montgomery, 3 Cir., 1947, 163 F. 2d 211; Porter v. Elliott, D.C.E.D.Pa. 1946, 69 F.Supp. 652, affirmed per curiam sub nom. Fleming v. Elliott, 3 Cir., 1947, 163 F.2d 215;

(2) As to whether the guaranties and immunities of the Fourth and Fifth Amendments to the United States Constitution are applicable in a § 205(e) action, see Crary v. Porter, 8 Cir., 1946, 157 F.2d 410; Amato v. Porter, 10 Cir., 1946, 157 F.2d 719; Martino v. Holzworth, 8 Cir., 1947, 158 F.2d 845; Brown v. Glick Bros. Lumber Co., D.C.S.D.Cal. 1943, 52 F.Supp. 913, reversed sub nom. Bowles v. Glick Bros. Lumber Co., 9 Cir., 1945, 146 F.2d 566; Bowles v. Beatrice Creamery Co., D.C.Wyo., 1944, 56 F. Supp. 805; Bowles v. Berard, D.C.E.D. Wis.1944, 57 F.Supp. 94; Bowles v. Trowbridge, D.C.N.D.Cal.1945, 60 F. Supp. 48;

(3) As to subject matter jurisdiction of federal district courts and applicability of Federal Rules of Civil Procedure, 28 U.S.C.A., in § 205(e) actions, see respectively Fields v. Washington, 3 Cir., 1949, 173 F.2d 701 and Kessler v. Fleming, 9 Cir., 1947, 163 F.2d 464;

(4) As to proper party plaintiff in an action under § 205(e), see Bowles v. Silverman, D.C.S.D.1944, 57 F.Supp. 990.

Compare also Testa v. Katt, 1947, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, 172 A.L.R. 225 and Thierry v. Gilbert, 1 Cir., 1945, 147 F.2d 603.

That a payment was or was not in the nature of a penalty would give no quick nor sound answer to deductibility. However, if we had to decide the nature of damage payments to the government under Section 205(e), we would liken them to penalties for the reasons expressed in Porter v. Montgomery, 3 Cir., 1947, 163 F.2d 211. We doubt that 205(e) was in any respect intended to provide for restitution.[10]

The real reason for denying the deductibility of "penalties" is not that they are characterized as such but because allowance in many cases would be against public policy. As the Supreme Court stated it in Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171, a tax deduction must not "frustrate [any] sharply defined * * * policies" of the sovereign. It is true that neither the tax statute nor the treasury regulations condition deductibility upon the lawful character, either directly or remotely, of the expenditure made. Compare Textile Mills Securities Corp. v. Commissioner, supra. But, in the nature of things, public policy must narrow the field of allowable deductions which rest as they do upon legislative indulgence.

■ Study convinces us that, in these circumstances, an expense is ordinary and necessary if commonly experienced in the community, provided that the expenditure does not frustrate the purposes of a statute or violate public policy. An expense is not ordinary and necessary when it is a fine in a criminal case or a forfeiture in a case where it has been proven that the forfeited article has been knowingly or carelessly permitted to be used for or toward an illegal purpose. But this is not saying that the payment made to the government was not ordinary and necessary solely because a law had been violated. Where, because of its nature, the law has been violated without intent or without carelessness tantamount to intent, violation of itself is not decisive of the problem.

■ Here there was no fine nor forfeiture under the above definitions of those terms. The law violated was highly complex and difficult to comprehend and therefore innocent violations were not uncommon. It was error in our opinion to conclude simply because the Price Control Act was admittedly violated and the expenditure was incurred as a direct consequence thereof that such expenditure was non-deductible for income tax purposes.

It seems to us that allowance of the sum paid to the government may be allowed as a business deduction when the overcharge has been innocently and unintentionally made and not made through an unreasonable lack of care. The whole question resolves itself into proof with the burden on the claimant. Under such principle it is clear that a fine levied in a criminal action can never be an ordinary and necessary ex-

10. " * * * Congress intended the imposition of damages on the price violator primarily as a deterrent to the violator rather than as a method of restitution to the buyer." Porter v. Crawford & Doherty Foundry Co., 9 Cir., 1946, 154 F.2d 431, 434. The fixing of a damage minimum regardless of actual damages evidences such intent. See 50 U.S.C.A.Appendix, § 925(e). Compare Bowles v. American Stores, 1943, 78 U.S.App.D.C. 238, 139 F.2d 377; Thierry v. Gilbert, 1 Cir., 1945, 147 F.2d 603.

Moreover, the Act defines "price" as the "consideration *demanded* or received in connection with the sale of a commodity" [Emphasis ours]. See 50 U.S. C.A.Appendix, § 942(b). And, it has been held that a § 205(e) action will lie even though the buyer did not pay to the seller the illegal excess demanded of him. See Porter v. Crawford & Doherty Foundry Co., supra; Garcia v. Ebeling Motor Co., 1949, 89 Cal.App. 2d 688, 201 P.2d 854.

The Supreme Court has held that § 205(a) authorizes district courts upon the Administrator's bill to order restitution. See Porter v. Warner Holding Co., 1946, 328 U.S. 395, at page 402, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332, wherein it is stated that restitution "differs greatly from the damages and penalties which may be awarded under § 205(e)." To the same effect, the Sixth Circuit in Bowles v. Skaggs, 1945, 151 F.2d 817, declared at page 821 that "An order of restitution is not a judgment for damages or for penalties. * * * The remedies are not irreconcilable."

pense. Where guilt has been established neither innocence nor good intention abide.

No payment to the Administrator made for overcharges in circumstances incompatible with innocence or with reasonable care can be a necessary and ordinary expense. Allowance of the deduction in either of these situations would definitely tend to frustrate enforcement of the Price Control Act.

Where the payment has been made in circumstances which are inconsistent with intention to violate the Act and inconsistent with a lack of due care to conform to the law it would be an ordinary and necessary expense. Allowance of the deduction in these circumstances could not frustrate the enforcement of the Act.

Reversed and remanded for further proceedings in conformity with this opinion.