JOSEPH SALZMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY SALZMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38657, 38658. Promulgated February 26, 1954.

*Leo Deutsch, Esq.,* for the petitioners.
*S. Jarvin Levison, Esq.,* for the respondent.

**OPINION.**

MURDOCK, *Judge:* The partnership violated MPR 287 as it was in effect in 1943 and 1944 by using the increased portion of the wages it paid in calculating its direct labor costs for the purpose of computing its maximum prices. It thereby overcharged for its products because the prices charged were then in excess of those permitted by O. P. A. on the costs of the petitioner recognized by O. P. A. in computing maximum prices. It was sued by O. P. A. and required to pay the overcharges into the Treasury of the United States in its taxable year ending in 1946. The petitioners, the two equal partners, are now claiming that the total of those payments was deductible by the partnership in 1946 as an ordinary and necessary expense of the business within the meaning of section 23 (a) (1) (A) of the Code.

A number of decided cases have dealt with this general subject. Those relating to the cost of goods sold and those where the violation was inadvertent or unintentional, either because the regulations were not understood or for some other reason, have no application here. It is not contended in this case that there was any failure to understand MPR 287 as it existed at the time these violations occurred nor in this a case where care was taken to avoid the making of any overcharge. These petitioners, acting through their partnership, with full knowledge that MPR 287 prohibited them from including the wage increase in calculating their direct costs for the purpose of supporting the prices which they charged for their goods, deliberately,

knowingly, intentionally, and purposely included the wage increase as a part of their direct labor costs in order thereby to support the prices which they were charging for their goods. That was an inexcusably highhanded procedure. Their excuse, for thus violating the O. P. A. regulations, is that the Association of which they were a member had advised them to take that course because it had asked the O. P. A. on February 15, 1943, to amend MPR 287 to recognize the proposed increase as a part of the direct labor costs and was hopeful of favorable action. They may have felt that a retroactive amendment of MPR 287 would leave them with no remedy to recover lost profits and it would be better, for the partnership, to overcharge the consumers. However, it is not suggested herein that any such proposed amendment was expected to be made retroactive. The Association told O. P. A. officials that some of its members were including the increase in wages in computing their direct labor costs, but the record does not show whether or not O. P. A. was told that the petitioners' partnership was one of those. An official of the O. P. A. wrote the Association on May 16, 1944, that the wage increase could not be included in calculating direct labor costs, but the petitioners' partnership kept right on in its deliberate violations and did not cease until an investigator for the O. P. A. examined its books and determined that overcharges had been made. It paid the overcharges in settlement of a suit brought by O. P. A. against it.

The partnership thus deliberately frustrated the purpose of the Emergency Price Control Act under which the O. P. A. operated and promulgated MPR 287, in that the overcharge was passed on to the customers of the partnership and to the ultimate users of its garments through intentional disregard of the regulation promulgated to control the price. Cf. *Yakus* v. *United States*, 321 U. S. 414; *Scioto Provision Co.*, 9 T. C. 439. This conclusion has been reached after considering all of the facts, including the fact that the O. P. A. accepted the exact amount of the overcharges in settlement of the suit and did not insist upon any additional amount as damages. Cf. *Jerry Rossman Corporation* v. *Commissioner*, 175 F. 2d 711. The record does not show that the incurring of this obligation to make restitution for the overcharges was an ordinary and necessary expense of the business of the partnership within the meaning of section 23 (a) (1) (A) but shows that it would be contrary to public policy to allow the deduction even if it did otherwise qualify under that provision of the Internal Revenue Code. Cf. *National Brass Works, Inc.*, 16 T. C. 1051, affd. 205 F. 2d 104; *Henry Watterson Hotel Co.*, 15 T. C. 902, affd. 194 F. 2d 539; *Garibaldi & Cuneo*, 9 T. C. 446.

*Decisions will be entered for the respondent.*