SINGER SEWING MACHINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2027, 2028, 2094.   Promulgated September 28, 1945.

---

*Albert L. Hopkins, Esq., Charles J. Nourse, Esq.,* and *Samuel H. Horne, Esq.,* for the petitioner.

*Jonas M. Smith, Esq.,* for the respondent.

854

MURDOCK, *Judge*: The petitioner, with its parent and other affiliates, had been filing consolidated returns for many years. The law was changed in 1934 and those companies no longer had the privilege of joining in a consolidated return. The petitioner has changed over to a separate return for 1934 and the question is, What is a proper amount for its opening inventory for that year? Save for some special problem inherent in the process of changing over, the petitioner would concededly be entitled to use cost to it or market value, whichever is lower.

The Commissioner contends that the actual amount of inventory taken at cost or market, whichever is lower, must be adjusted to the much lower one of cost to Manufacturing in order to eliminate the intercompany profit to Manufacturing in the larger amount. He does not and can not support this contention by an argument that it is necessary in order to prevent the intercompany profit, thus eliminated from inventory, from escaping tax. The amount which he would eliminate from the opening inventory is not the amount of the profit of Manufacturing which has escaped tax under the method heretofore used by these companies with the approval of the Commissioner. It is $6,106,560.24 greater than the profit which has escaped tax.

The petitioner contends, but not obstinately, that no adjustment whatsoever should be made to its actual inventory at cost or market. But it urges with all earnestness that in no event should its cost or market figure be reduced by more than $2,325,015.68, the amount of the intercompany profit of Manufacturing which had not been taxed on the consolidated returns at the close of 1933 and which might completely escape taxation if the adjustment is not made.

The $6,106,560.24 of intercompany profits of Manufacturing represented in the petitioner's opening inventory for 1918, the first consolidated return year, had been reported previously as income of Manufacturing on its separate returns. All profits on goods thereafter acquired by the petitioner from Manufacturing and sold prior to the close of 1933 were reported and taxed as income on the consolidated returns. A large part of the goods acquired by the petitioner from Manufacturing during the years 1918 through 1933, inclusive, never appeared in any inventory. The adjustments made from year to year represented only a relatively small part of that part of Manufacturing's profits represented in the petitioner's opening and closing inventories. The method used by the petitioner and its affiliates did not result in the permanent elimination from consolidated income of amounts once treated as intercompany profits, but served rather to reflect those amounts in the year in which they were earned by the group. The adjustments washed out during the consolidated return period,

except for the $2,325,015.68 of intercompany profits of Manufacturing which had not yet been reported in 1933 at the end of the consolidated return periods. Even the use of market value in the petitioner's inventories, if there ever was such a use during the consolidated return years, did not prevent the adjustments from canceling one another except for the amount just mentioned.

The shift from consolidated to separate returns should be made so that the revenues will not suffer. However, no greater burden than necessary for this purpose should be imposed upon the petitioner. It is true that any downward adjustment of the cost or market inventory of the petitioner will tax to it a profit which is not its own and which will never be realized by it. But if it is taxed with a profit of its sole stockholder, Manufacturing, which would otherwise escape taxation due principally to the consolidated return method used from 1918 up to 1934, then the hardship would be really none at all and an adjustment should be made. *Commissioner* v. *Liberty National Co.*, 58 Fed. (2d) 57, certiorari denied, 287 U. S. 603 (reversing 18 B.T.A. 510). The petitioner concedes that the statutes and regulations beginning with the Revenue Act of 1928, applicable to the year 1929 and subsequent years, require an adjustment in the opening inventory for 1934 for any intercompany income subsequent to 1928 which escaped taxation on consolidated returns. But it points out that during that period no intercompany profits escaped taxation. It then argues that those acts and regulations may not be retroactively applied to make an adjustment for any intercompany income which may have escaped taxation prior to 1929. The holding in the last cited case is to the contrary. The court pointed out that the provisions to which the petitioner here refers were only a recognition and a crystallization of prior existing law.

Congress authorized the Commissioner to promulgate regulations in regard to consolidated returns to cause income to be clearly reflected and to prevent the avoidance of tax. Those filing consolidated returns were deemed to have consented to the regulations in so far as they were not inconsistent with the act. Sec. 141 (a) and (b), Revenue Act of 1932. Those regulations have differentiated somewhat between property generally and that which is inventoried. They provided that the opening inventory for the first separate return after consolidated returns shall be "the proper value of the closing inventory" used in computing consolidated income on the last consolidated return. See Regulations 78, article 39 (b), promulgated pursuant to the Revenue Act of 1932 and Regulations 86, article 113 (a) (11)–1 under the Revenue Act of 1934, applicable here. It has been held that these regulations authorize an adjustment to the opening inventory for the first separate return to prevent the avoidance of tax resulting from any previous

856

elimination of intercompany profits of the affiliate which brought goods into the group during the consolidated return period. *Bostonian National Shoe Stores, Inc.*, 39 B. T. A. 444; *Tung-Sol Lamp Works, Inc.* v. *United States*, U. S. Dist. Ct., S. Dist. New York, Dec. 7, 1942; *Magnolia Petroleum Co.* v. *Thomas*, U. S. Dist. Ct., N. Dist. Texas, Oct. 4, 1944. See also section 113 (a) (11), Revenue Act of 1934, which provides that the basis after affiliation of property acquired during affiliation shall be determined in accordance with the regulations "without regard to intercompany transactions in respect of which gain   \*   \*   \* was not recognized." The implication is clear that no adjustment should be made for intercompany transactions in respect of which gain has been recognized. The unrecognized gain in this case was $2,325,-015.68 and we have adjusted the petitioner's opening inventory accordingly. The statute and regulations require that and no more. This is now clearly spelled out in later regulations. See Regulations 104, sec. 23.39 (b) (3).

The small amounts of donations for 1934 and 1935 which the petitioner seeks to deduct as ordinary and necessary expenses bear a reasonable relationship to the business of the petitioner and were made with a reasonable expectation on the part of the executives that they would produce a financial return to the corporation commensurate with their amount. See Regulations 86, art. 23 (o)–2. Our conclusion in respect to these relatively small items is supported by a fair preponderance of the evidence in the light of all the circumstances.

*Decision will be entered under Rule 50.*